# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OSAMA TAHA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 18 C 1201 |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant International Brotherhood of Teamsters' ("IBT") motion to dismiss Plaintiff Osama Taha's ("Taha") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants IBT's motion.

## BACKGROUND

The following facts are taken from Taha's SAC and are assumed to be true for purposes of this motion. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in Taha's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

### a. Taha's Employment Termination

On or around December 12, 1988, Taha began working for United Airlines ("United") as a mechanic and was promoted to the position of aircraft inspector in 1992. While employed at United, the terms and conditions of Taha's employment were governed by a Collective Bargaining Agreement ("CBA") between United and IBT.[1]

In March 2003, while working out of United's Indianapolis, Indiana facility, Taha was laid off due to cost-cutting measures. Pursuant to Article 6 of the CBA, Taha retained recall rights to the position from which he was involuntarily laid off. If the opportunity presented itself, his intention was to return to work at United. Taha found it difficult, however, to find a new job after the layoff and experienced severe financial difficulties. After many months of unemployment and the loss of his home, Taha accepted a position as an aircraft inspector at Saudi Aramco in Saudi Arabia. This new job required him to relocate his entire family, including his mother, to Saudi Arabia.

On October 2, 2015, Taha was offered, and he subsequently accepted, an opportunity to return to work for United as a line technician at O'Hare Airport in Chicago, Illinois. His return to work was delayed by governmental paperwork necessary for his return to the United States. By January 20, 2016, Taha had relocated his family, excluding his mother, back to the United States and first reported for work.

---

[1] By way of clarification, IBT submits that it became the certified bargaining representative for the aircraft technicians employed by United in 2008, was the signatory to the CBA in effect at the time of Taha's termination, and continues to represent those employees today. Representation of the technicians based at O'Hare Airport has been delegated to IBT Local 781. The President of IBT Local 781 is Paul Stripling.

On February 12, 2016, Taha learned that his mother had suffered a serious heart attack and that it was necessary for him to return to Saudi Arabia to care for her. On that same day, Taha spoke with his supervisor, Edwone Elswick ("Elswick"), and requested time off to go and care for his sick mother. He was granted a 30-day personal leave of absence lasting from February 16, 2016 to March 18, 2016.

Once in Saudi Arabia, the task of finding adequate post-hospital care for his mother proved more difficult than he had anticipated. Taha emailed Mary Dahl, the Manpower Planning Supervisor, to request an extension of his personal leave until August 21, 2016. Copied on this request were Elswick, James Montgomery, Don Larson, Garrett West, and IBT Shop Steward Mike Pecoraro ("Pecoraro").

Taha also contacted United's Employee Assistance Program ("EAP") for help in this matter and was subsequently referred to Carla Starck ("Starck") in United's Human Resources Department. Taha contacted Starck on multiple occasions by telephone to discuss his leave extension request. Starck indicated that the decision of whether Taha could remain in Saudi Arabia for an extended period of time was up to the Operation Management Department. Accordingly, between April 2016 and May 2016, Taha contacted IBT President Paul Stripling ("Stripling"), Pecoraro, IBT EAP Representative Caleb Good and Joseph Foley to further discuss his leave extension request. Each time, Taha was told to trust in the union process.

On or around April 28, 2016, a letter was sent to Taha's Indiana home address denying the leave extension. Taha never received word that the leave extension had

3

been denied, however, because he was still in Saudi Arabia. Then, on or around June 16, 2016, Taha received a letter from United terminating his employment. The letter stated that Taha's failure to return to work at the end of his first leave of absence, on March 18, 2016, was considered by United to be job abandonment and insubordination.

### b. Grievance Hearing

On or around June 16, 2016, the day he learned of his termination, Taha filed a grievance with his union protesting his termination. Following the termination, Taha had no choice but to remain in Saudi Arabia and return to work at Saudi Aramco, once again relocating his family to Saudi Arabia at great cost.

On January 13, 2017, Taha returned to the United States for a grievance hearing before the Joint Board of Adjustment ("JBA"). The union's grievance procedure is outlined under Article 19 of the CBA.[2] Per Article 19.D.2, the findings and decisions of the JBA are final and may only be appealed to arbitration in the case of deadlock.

Stripling was Taha's union representative at the hearing. Before the hearing, Taha heard Stripling and Starck "chatt[ing] genially" about Starck acquiring airline tickets for some of Stripling's friends. Once the hearing commenced, Stripling inexplicably told Taha to remain silent. Stripling also prevented Taha from presenting several "strong and important exhibits" evidencing the communications between Taha and United regarding Taha's requested leave extension.

---

[2] We accept IBT's inclusion of the CBA as properly part of the pleadings because Taha has consented and because this document is referred to in his SAC and central to his claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

4

On February 7, 2017, the JBA issued its decision.³ On March 1, 2017, Taha learned that his grievance had been denied. Upon learning this information, Taha made repeated attempts by phone and email to get in touch with IBT representatives about taking his grievance to arbitration, which he alleges is the next step in the grievance process. On or around August 21, 2017, IBT informed Taha that the grievance had been denied and that the grievance procedure was concluded.

Taha filed the present lawsuit against IBT on February 16, 2018. On April 17, 2018, Taha filed the subject of this opinion, his one-count SAC, alleging that IBT breached its duty of fair representation. IBT moves to dismiss Taha's SAC.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Taha need not provide detailed factual allegations, but he must provide enough factual support to raise his right to relief above a speculative level. *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In conducting our review, we must consider not only the complaint itself, but also…documents that are

---

³ IBT has likewise provided as an exhibit to its motion to dismiss the JBA's decision letter denying Taha's grievance. Although Taha has neither consented nor contested the inclusion of this letter, for the same reasons we accepted the CBA as properly part of the pleadings we also accept this decision letter. In addition, we point out that this this letter is dated February 7, 2017 yet in his SAC Taha claims that he did not learn of the denial until March 1, 2017. Although the parties concede to the latter date, the pleadings provide no clarity as to this lag in notice.

critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

Taha alleges that IBT breached its duty of fair representation under the Railway Labor Act ("RLA"), 45 U.S.C. §§ Sec. 151 *et seq.*, by failing to serve upon United a written demand for arbitration (1) "when it was aware that Taha was not allowed to present all relevant facts at the grievance hearing," and (2) "where there was no just cause to terminate Taha." IBT urges the Court to dismiss Taha's SAC, arguing that (1) Taha fails to sufficiently allege a breach of duty of fair representation claim; and (2) Taha's claim is time-barred.

## I. Duty of Fair Representation

IBT argues that Taha has failed to allege facts sufficient to support a claim for breach of duty of fair representation. A union owes its members a "duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 75 (1991). In a grievance proceeding, the union represents the many even while representing the one. Thus, in order to protect the interests of the majority of its members, the union is afforded "considerable discretion" in dealing with grievance matters. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). Courts are accordingly required to show extreme deference to the union. *Vaca v. Sipes*, 386 U.S. 171, 191 (1967); *Holloway v. Shambaugh & Son, Inc.*, 988 F. Supp. 2d 901, 908 (N.D. Ind. 2013). These principles culminate in the rule that a union breaches the duty of fair representation only when its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190.

Taha, despite being silent on these factors in his SAC, argues that he has sufficiently alleged that IBT acted "in bad faith and in an arbitrary manner" when it prevented him from speaking and providing evidence at his grievance hearing. As a preliminary matter, "a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Taha's factual allegations fail to support this contention anyhow.

7

1. *Arbitrariness*

A union's actions are considered arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *O'Neill*, 499 U.S. at 67 (citation and internal quotation marks omitted). Moreover, Taha must also allege that he was "actually harmed by the union's actions." *Garcia*, 58 F.3d at 1176–77. Accordingly, Taha must state a claim from which a reasonable inference could be made "that the outcome of the arbitration would probably have been different but for the union's activities." *Id.*

Taha argues that IBT acted arbitrarily when it prohibited him from speaking up and introducing evidence on his behalf during his grievance hearing. While this may be frustrating to Taha, it cannot reasonably be inferred that IBT's behavior was "so far outside a wide range of reasonableness, as to be irrational." *O'Neill*, 499 U.S. at 67. Taha essentially argues that a union representative must always let a member present his own case at a grievance hearing and that anything less constitutes perfunctory conduct. Yet we find this sentiment at odds with the great deference accorded to unions in grievance procedures.

Taha also fails to allege the second prong of a claim for arbitrariness: that "the outcome of the arbitration would probably have been different but for the union's activities." *Garcia*, 58 F.3d at 1177. Rather, Taha simply offers up the conclusion that he "believes that his grievance was meritorious and would have been successful had he

been allowed to speak up and introduce evidence on his behalf." Yet Taha provides no further elaboration about how his grievance against United might have been successful in its own right or what was contained in the "strong and important exhibits."

Although Taha is not required to provide detailed factual allegations, he must provide *some* factual allegations beyond his mere opinion. Lacking any factual support or helpful legal precedent, we find that Taha has failed to allege that IBT acted arbitrarily.

2. *Bad Faith*

Nor does the mere contention that IBT prevented Taha from speaking at his grievance hearing, even without explanation, sufficiently allege bad faith on IBT's part. Taha does not allege that IBT harbored any ill will or animus towards Taha in failing to arbitrate Taha's grievance.

The closest Taha comes to assigning IBT with any motivation at all is his allegation that "[p]rior to the beginning of the hearing, Stripling and Starck chatted genially about the [sic] Starck getting airlines [sic] tickets for some of Stripling's friends." Taha does not provide more detailed evidence of the exchange from which we could infer improper motive was present. Nor, for that matter, does he even claim that the outcome of the hearing was somehow predicated on Starck's acquisition of airline tickets. Absent any other indicia that improper motives were an undercurrent in this conversation or any other factual allegations evincing some alternative improper motive on IBT's part, Taha has simply failed to allege bad faith.

For these reasons, the Court finds that Taha failed to sufficiently allege a breach of duty of fair representation claim.

## II. Timeliness

IBT also contends that Taha's claim is time-barred. A claim for breach of the duty of fair representation brought under the RLA must be brought within six months of the alleged violation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170–72 (1983)*; see also Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985) (per curiam) (applying the six-month limitation period to cases brought under the RLA). This period begins to run when "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach of duty]." *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir. 1983)) (quotations omitted).

Even though a statute of limitations defense is not typically raised at the motion to dismiss stage, "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Such determinations by the Court are appropriate at the 12(b)(6) stage. *See Steffens v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees*, 797 F.2d 442, 446 (7th Cir. 1986).

The parties do not dispute that the six-month statute of limitations applies. The issue at hand is when this limitations period commenced. IBT argues that the

10

limitations period began on March 1, 2017, when Taha first learned that his grievance had been denied. Taha, on the other hand, believes that the limitations period did not begin until "he was informed by the IBT on August 21, 2017 that his case was over, and that it would take no further steps on his behalf." Under Taha's view, the limitations period began on August 21, 2017 and this suit, filed on February 16, 2018, is timely.

To make this argument, Taha likens his case to that of *Pisut v. United Transportation Union*. 140 F. Supp. 3d 711 (N.D. Ill. 2015). We find this to be an inapt comparison. In *Pisut*, the plaintiff's union conveyed to the plaintiff that it would appeal his termination when in fact it did not. *Id.* at 716. Over the span of three years, the plaintiff reached out to the union numerous times to inquire about the status of his appeal, each time being told that there was no new information. *Id.* It was only at the end of the third year the plaintiff was finally told that no appeal had been or would be filed, whereupon he filed suit less than five months later. *Id.* In rejecting the defendant's motion for summary judgment, the *Pisut* court held that the plaintiff's failure to discover the alleged breach could be reasonable in light of the union's deceptive actions. *Id.* at 720–21.

Taha believes that like *Pisut*, his limitation period did not begin until he received final word that IBT would not proceed with his grievance. Indeed, he argues that it was "IBT's responsibility to inform [him] that it was not going to take his case to arbitration, and not for him to figure out on his own." Taha is incorrect. The standard is one of reasonable, not actual, notice and whether or not IBT did or did not directly notify Taha

of the finality of its decision "is not itself a bar to accrual." *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 915 (7th Cir. 1999) (cited in *Pisut*, 140 F. Supp. 3d at 719).

Without any supporting factual allegations to the contrary, we believe that Taha reasonably should have known that IBT's decision was final and that his claim was ripe. Taha does not allege that IBT misled him and, unlike in *Pisut*, Taha received explicit notification that his grievance had been denied in the form of a letter. On its face, the text of the JBA decisions letter itself should have indicated IBT was taking no further action: "The board has denied your grievance. Good luck to you in future endeavors" would seem to imply that this endeavor was exhausted.

Furthermore, a reasonable exercise of diligence would have informed Taha that this decision could not be taken to arbitration. As IBT points out, the terms of the CBA clearly state that "[t]he Joint Board's findings and decisions shall be final and binding upon the Teamsters-Airline Division, the Company, and the individual employee or employees to such dispute. If the Board deadlocks, the Union may appeal the case to arbitration." Taha does not allege that the board was deadlocked, that the IBT deceived him, that some other grant of authority gave him the right to take his case to arbitration, or that the CBA is somehow defunct. In fact, that Taha alleges IBT violated Article 19 demonstrates some knowledge of the grievance process. Taha then must have known, or at the very least should have known, that under the provisions of the CBA his time to bring a claim was triggered upon notice of the JBA's "final and binding" decision.

*See Metz*, 715 F.2d at 304 (imputing knowledge of the collective bargaining agreement and its grievance procedures upon a union employee bringing a breach of duty of fair representation claim for failure to process a grievance).

Taha's own allegations show that Taha knew, or reasonably should have known, of the JBA decision and its finality on March 1, 2017. However, Taha did not file his initiate this lawsuit until February 16, 2018. Since that initial notice, the six-month limitations period has passed almost two times over and subsequently Taha's right to litigate is now stale. We find that Taha's claim is time-barred and therefore grant IBT's motion to dismiss Taha's SAC.

## CONCLUSION

For the aforementioned reasons, IBT's motion is granted and Taha's SAC is dismissed. It is so ordered.

Dated: 12/12/2018

_____
Charles P. Kocoras
United States District Judge